RICHARD L HOLCOMB (HI Bar No. 9177)
JUSTIN A. BRACKETT (HI Bar No. 9954)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@live.com
Email:  justinbrackettlaw@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TEMALETI ULUAVE, | ) | CASE NO.__1:14-CV-109 |
| | ) | _____ |
| Plaintiff, | ) | |
| vs. | ) | COMPLAINT FOR DAMAGES |
| | ) | DECLARATORY AND INJUNCTIVE |
| ENCORE CAPITAL GROUP, INC., | ) | RELIEF, EXHIBITS ONE THROUGH |
| MIDLAND FUNDING, LLC,   and | ) | FIVE, AND VERIFICATION |
| MIDLAND CREDIT | ) | |
| MANAGEMENT,INC., | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## <u>INTRODUCTION</u>

1.      This is an action for damages against the Defendants for violations of the

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 <u>et seq.</u>

## JURISDICTION

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

3.     This action arises out of violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") by all Defendants, in their illegal efforts to collect consumer debts.

4.     Venue is proper in this District because the acts and transactions occurred here and Plaintiff resides here.

## PARTIES AND PERSONAL JURISDICTION

5.     Plaintiff, Temaleti Uluave (hereinafter referred to as "Plaintiff" and/or "Ms. Uluave") is a resident of this State, District and Division who is authorized by law to bring this action.

6.     Defendant Encore Capital Group, Inc. (hereinafter "Defendant Encore") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Delaware, and maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its registered agent for service of process.

7.     Defendant Midland Funding, LLC (hereinafter "Defendant Midland Funding") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a

for-profit limited liability company organized in Delaware that is a wholly owned subsidiary of Defendant Encore, and that maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its registered agent for service of process.

8.      Defendant Midland Credit Management, Inc. (hereinafter "Defendant Midland" or "Midland") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Kansas that is a wholly owned subsidiary of Defendant Encore, and maintains Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614, as its registered agent for service of process.

9.      Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTUAL ALLEGATIONS

10.     Defendants have alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and this debt is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).  More specifically, Defendants allege this debt was originally owed to, or

serviced by "Beneficial."

11.     Defendants use mail in their businesses.

12.     Defendants use telephone communications in their businesses.

13.     The primary purpose of all Defendants' businesses is the collection of debts.

14.     Defendants regularly collect, or attempt to collect, debts owed, or due, or asserted to be owed or due to another.

*15.*     Defendants are all debt collectors subject to the provisions of the Fair Debt Collection Practices Act.

### *October 18, 2012 Collection Letter from Midland*

16.     Ms. Uluave has received letters attempting to collect the purported debt from Midland.

17.     The October 18, 2012 collection letter from Midland is attached hereto as Exhibit One.

18.     The October 18, 2012 letter from Midland asserted an amount due of $10, 497.55.

19.     The October 18, 2012 letter lists a "MCM Account Number" ending in 4437 and an "Original Account Number" ending in 5155.

20.     The front of the October 18, 2012 letter states:

Benefits of Paying!

- **We will stop applying interest to your account as soon as you make the first payment!**

- Save up to $4,199.02 if you choose Option 1.

- Offer expiration date: 11-17-2012

- Your credit report will be updated with each payment made, and once your agreed-upon payments to settle the account, your credit report will be updated as 'Paid in Full'!

See Exhibit One. Emphasis in original.

21.     The amount to be paid, if any, which would operate to stop the accrual

of interest is not specified. See Exhibit One**.**

22.     The rate of interest accruing is not specified. See Exhibit One**.**

23.     Also, on the back of the letter, Midland states that:

As of the date of this letter, you owe the amount listed in this letter as Current Balance.  Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.  To obtain an exact payoff amount, or for further information, please call one of our Account Managers at (800) 282-2644.

See Exhibit One.

24.     Midland's October 18, 2012 letter is signed by "H. Torres, Division

Manager". See Exhibit One.

### _February 27, 2013 Collection Letter from Midland_

25.     Ms. Uluave received another letter from Midland attempting to collect the purported debt dated February 27, 2013.

26.     The February 27, 2013 collection letter from Midland is attached hereto as Exhibit Two.

27.     The February 27, 2013 letter from Midland asserted an amount due of $11, 218.79.

28.     The February 27, 2013 letter lists a "MCM Account Number" ending in 4437 and an "Original Account Number" ending in 5155.

29.     The front of the February 27, 2013 letter states:

Benefits of Paying!

- **We will stop applying interest to your account as soon as you make the first payment!**

- Save up to $7,853.15 if you choose Option 1.

- Offer expiration date: 3-29-2013

- After receiving your final payment, we will consider the account PAID IN FULL and the three major credit reporting agencies will be updated accordingly.

See Exhibit Two. Emphasis in original.

30.     The amount to be paid, if any, which would operate to stop the accrual of interest is not specified. See Exhibit Two**.**

31.     The rate of interest accruing is not specified. See Exhibit Two**.**

[ 6 ]

32.     Also, on the back of the letter, Midland states that:

> As of the date of this letter you owe the amount listed in this letter as Current Balance.  If the offer to settle this account is not accepted on or before 03-29-2013, the amount you owe may be greater because of interest that may vary from day to day.  To obtain an exact payoff amount, or for further information, please call one of our Account Managers at (800) 282-2644.

See Exhibit Two.

33.     Midland's February 27, 2013 letter is signed by "H. Torres, Division Manager". See Exhibit Two.

## *April 11, 2013 Collection Letter from Midland*

34.     Ms. Uluave received another letter from Midland attempting to collect the purported debt dated April 11, 2013.

35.     The April 11, 2013 collection letter from Midland is attached hereto as Exhibit One.

36.     The April 11, 2013 letter from Midland asserted an amount due of $11,446.55.

37.     The April 11, 2013 letter lists a "MCM Account Number" ending in 4437 and an "Original Account Number" ending in 5155.

38.     The front of the April 11, 2013 letter states:

Benefits of Paying!

- **We will stop applying interest to your account as soon as you**

[ 7 ]

**make the first payment.**

- Save up to $8,012.58 if you choose Option 1.

- Offer expiration date: 05-11-2013

- After receiving your final payment, we will consider te account PAID IN FULL and the three major credit reporting agencies will be updated accordingly.

See Exhibit Three. Emphasis in original.

39.     The amount to be paid, if any, that would operate to stop the accrual of

interest in not specified. See Exhibit Three**.**

40.     Also, on the back of the letter, Midland states that:

> As of the date of this letter you owe the amount listed in this letter as Current Balance.   The offer to settle this account for the discount(s) offered in this letter remains open until 05-11-2013.  If the offer to settle this account is not accepted on or before 05-11-2013, the amount you owe may be greater because of interest that may vary from day to day.  To obtain an exact payoff amount, or for further information, please call one of our Account Managers at (800) 282-2644.

See Exhibit Three.

41.     Midland's April 11, 2013 letter is signed by "H. Torres, Division

Manager". See Exhibit Three.

### *January 3, 2014 Collection Letter from Midland*

42.     Ms. Uluave received another letter from Midland attempting to collect the

purported debt dated January 3, 2014.

43.     The January 3, 2014 collection letter from Midland is attached hereto as Exhibit Four.

44.     The January 3, 2014 letter from Midland asserted an amount due of $12,889.03.

45.     The January 3, 2014 letter lists a "MCM Account Number" ending in 4437 and an "Original Account Number" ending in 5155.

46.     The front of the January 3, 2014 letter states:

Benefits of Paying!

- **We will stop applying interest to your account as soon as you make the first payment!**

- Save up to $9,022.32 if you choose Option 1.

- Offer expiration date: 02-02-2014

- After receiving your final payment, we will consider the account PAID IN FULL and the three major credit reporting agencies will be updated accordingly.

See Exhibit Four. Emphasis in original.

47.     The amount to be paid, if any, that would operate to stop the accrual of interest in not specified. See Exhibit Four**.**

48.     The rate of interest accruing is not specified. See Exhibit Four**.**

49.     Also, on the back of the letter, Midland states that:

As of the date of this letter you owe the amount listed in this letter

as Current Balance.   The offer to settle this account for the discount(s) offered in this letter remains open until 02-02-2014.  If the offer to settle this account is not accepted on or before 02-02-2014, the amount you owe may be greater because of interest that may vary from day to day.  To obtain an exact payoff amount, or for further information, please call one of our Account Managers at (800) 282-2644.

See Exhibit Four.

50.    Midland's January 3, 2014 letter is signed by "H. Torres, Division Manager". See Exhibit Four.

### *February 12, 2014 Collection Letter from Midland*

51.    Ms. Uluave received another letter from Midland attempting to collect the purported debt dated February 12, 2014.

52.    The February 12, 2014 collection letter from Midland is attached hereto as Exhibit Five.

53.    The February 12, 2014 letter from Midland asserted an amount due of $13,116.79.

54.    The February 12, 2014 letter lists a "MCM Account Number" ending in 4437 and an "Original Account Number" ending in 5155.

55.    The front of the February 12, 2014 letter states:

Benefits of Paying!

- **We will stop applying interest to your account as soon as you make the first payment!**

- Save up to $9,181.75 if you choose Option 1.

- Offer expiration date: 03-14-2014

- After receiving your final payment, we will consider the account PAID IN FULL and the three major credit reporting agencies will be updated accordingly.

See Exhibit Five. Emphasis in original.

56.    The amount to be paid, if any, that would operate to stop the accrual of

interest in not specified. See Exhibit Five**.**

57.    The rate of interest accruing is not specified. See Exhibit Five**.**

58.    Also, on the back of the letter, Midland states that:

As of the date of this letter you owe the amount listed in this letter as Current Balance.  The offer to settle this account for the discount(s) offered in this letter remains open until 03-14-2014.  If the offer to settle this account is not accepted on or before 03-14-2014, the amount you owe may be greater because of interest that may vary from day to day.  To obtain an exact payoff amount, or for further information, please call one of our Account Managers at (800) 282-2644.

See Exhibit Five.

59.    Midland's February 12, 2014 letter is signed by "H. Torres, Division

Manager". See Exhibit Five.

[11]

## CAUSES OF ACTION

### *COUNT ONE:*
### *VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT*

### FIRST VIOLATION OF
### THE FAIR DEBT COLLECTION PRACTICES ACT:
### FALSE OR MISLEADING REPRESENTATIONS

60.     The acts of Defendants constitute violations of the Fair Debt Collection

Practices Act.  Defendants violations of the FDCPA include, but are not limited to, the

use of any false, deceptive, or misleading representations or means in connection with

the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

61.     Each of the letters from Defendants demands a different amount from

Ms. Uluave.

62.     A calculation of the time between the Defendants collection letters and

the amounts sought shows that each and every letter has accrued a different amount

of interest, and none of them applied the contractual rate of interest.

63.     By assigning different account balances and interest rates to the same

account, none of which are the applicable contract rate of interest, Defendants have

confused Ms. Uluave as to what amount of money she owes on this account.

64.     The letters from Defendants demand odd amounts, *i.e.*, $10,497.55 as of

October 18, 2012, $11,218.79 as of February 27, 2013, $11,446.55 as of April 11,

[12]

2013, $12,889.03 on January 3, 2014, and finally $13,116.79 on February 12, 2014.

65.     Ms. Uluave is confused as to how Defendants calculated the amount owed and what authority they have to demand varying rates of interest, *i.e.*, 18.998% from October 18, 2012 to February 27, 2013; 17.233% from February 27, 2013 to April 11, 2013; 17.227% from April 11, 2013 to January 3, 2014, and 16.125% from January 3, 2014 to February 12, 2014.

66.     Ms. Uluave asserts that none of these rates of interest were the correct contractual rate of interest on her Beneficial account ending in 5155.

67.     By assigning different account balances and an unknown rate of interest to the underlying account, Defendants have confused Ms. Uluave as to what amount of money she owes on this account.

68.     Moreover, the collection letters from Midland state the amount Ms. Uluave owes may be greater because of "interest that may vary from day to day." See Exhibits Two, Three, Four, and Five.

69.     Defendants never state the amount of interest being applied to the account in any of their correspondences.

70.     By changing the account number assigned to the debt, Defendants have misled and confused Ms. Uluave as to which account they are collecting.

## SECOND VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT:
## <u>FALSE OR MISLEADING REPRESENTATIONS</u>

71.     The acts of Defendants constitute violations of the Fair Debt Collection

Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the

use of false, deceptive, or misleading representations in connection with the character,

amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

72.     The actual amount of the alleged debt is certainly in question.  It is overly

confusing as to what amount is owed on this account since the amount of Tulipani

73.     Ms. Uluave is confused as to how Defendants calculated the amount owed

and what authority they have to demand varying rates of interest, *i.e.*, 18.998% from

October 18, 2012 to February 27, 2013; 17.233% from February 27, 2013 to April 11,

2013; 17.227% from April 11, 2013 to January 3, 2014; and 16.125% from January 3,

2014 to February 12, 2014.

74.     By demanding amounts that increase by irregular rates of interest,

Defendants have confused Ms. Uluave as to what amount of money, if any, she owes

on this account.

75.     Ms. Uluave asserts that the changing balances demanded by Defendants

demonstrate that Defendants have no knowledge of the correct amount owed, if any.

Further, Defendants are attempting to keep Ms. Uluave confused as to the amount owed so that if she were to make payments on this account she would never know the actual amount owed, and instead would keep paying indefinitely on fees, interest, or other charges that were never legally owed by her.

### THIRD VIOLATION OF THE
### FAIR DEBT COLLECTION PRACTICES ACT:
### <u>UNFAIR PRACTICES</u>

76.     The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

77.     The amounts sought by Defendants in their various communications include rates of interest and various fees not expressly authorized by the agreement creating the debt or permitted by law, and thus were in direct violation of 15 U.S.C. § 1692f(1).

78.     The letters from Defendants assert that different balances are owed, each greater than that originally demanded, and after calculating the time that had passed between letters and the change in the amount owed it is obvious the interest and fees charged were not applied consistently, and thus could not be in compliance with the

original agreement creating the debt.

79.     Ms. Uluave asserts her contractual rate of interest was never the amount of 18.998%, which is the rate demanded from October 18, 2012 to February 27, 2013.

80.     Ms. Uluave asserts her contractual rate of interest was never the amount of 17.233%, which is the rate demanded from February 27, 2013 to April 11, 2013.

81.     Ms. Uluave asserts her contractual rate of interest was never the amount of 17.227% which is the rate demanded from April 11, 2013 to January 3, 2014.

82.     Ms. Uluave asserts her contractual rate of interest was never the amount of 16.125% which is the rate demanded from January 3, 2014 to February 12, 2014.

83.     Defendants are demanding rates interest that are not authorized by the agreement creating the debt or permitted by law.

84.     The most recent letters from Defendant Midland state "the amount you owe may be greater because of interest that may vary from day to day."  Exhibit Two, Exhibit Three, and Exhibit 4.

85.     Ms. Uluave disputes that the original contract allowed the imposition of interest that "may vary from day to day."

86.     The amounts sought by Defendants in their various communications include rates of interest and various fees not expressly authorized by the agreement creating the debt or permitted by law, and thus were demands in direct violation of 15

U.S.C. § 1692f(1).

### COUNT TWO:
### VIOLATIONS OF THE HAWAI'I REVISED STATUTES

### FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES:
### FALSE OR MISLEADING REPRESENTATIONS

87.     The acts of Defendants constitute violations of the Hawai'i Revised Statutes.   Violations include, but are not limited to, any false representation or implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding.   Such conduct is a violation of Haw. Rev. Stat. § 443B-18(5).

88.     The underlying debt is disputed.

89.     The letters from Defendants demand odd amounts from Ms. Uluave and she asserts they have demanded unfamiliar and inconsistent rates of interest and/or fees.

90.     The amounts demanded by Defendants increased from 10,497.55 on October 18, 2012 to $11,218.79 on February 27, 2013, increased again to $11,446.55 as of April 11, 2013, increased again to $12,889.03 on January 3, 2014, and increased yet again to $13,116.79 as of February 12, 2014.

91.     A calculation of the time between the letters and the amounts demanded in the letters shows that an unknown rate of interest and/or fees were being applied to the

account.

92.     A calculation of the time between the letters and the amounts demanded in the letters shows that the balance increases at a rate that does not comply with the terms of the initial contract.

93.     By assigning different account balances and unknown rates of interest to the underlying account, Defendants have made one or more false representations or implications of the character, extent, or amount of money Ms. Uluave owes on this account.

94.     A calculation of the time passed and the amount demanded demonstrates that Defendants charged interest at a rate of 18.998% from October 18, 2012 to February 27, 2013; 17.233% from February 27, 2013 to April 11, 2013; 17.227% from April 11, 2013 to January 3, 2014, and 16.125% from January 3, 2014 to February 12, 2014, which are not the contractual rates of interest.

95.     By assigning different account balances and interest rates to the same account, none of which are the applicable contract rate of interest, Defendants have made one or more false representations or implications of the character, extent, or amount of money Ms. Uluave owes.

96.     Moreover, the collection letters from Defendants state "the amount you owe may be greater because of interest that may vary from day to day." See Exhibits

Two, Three, Four, and Five.

97.   Defendants never state the amount of interest being applied to the account in any of their correspondences.

98.   The letters from Defendants demand very odd amounts from Ms. Uluave and she is confused as to how Defendants calculated said amounts and what authority they have to demand unfamiliar rates of interest.

99.   By attempting to collect unknown and unauthorized amounts through false and deceptive communications, Defendants have deceived and/or misled Ms. Uluave as to what amount of money she owes on this account.

## SECOND VIOLATION OF THE HAWAI'I REVISED STATUTES:
## FALSE OR MISLEADING REPRESENTATIONS

100.   Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact the fees or charges may not legally be added to the existing obligations violates Haw. Rev. Stat. § 443B-18(8).

101.   Upon information and belief, Ms. Uluave asserts that Defendants did not have authority to impose additional fees on the originating account.

102.   By adding unwarranted interest, fees and/or charges, as explained in detail above, Defendants have demanded amounts that are not expressly authorized by the agreement creating the debt or permitted by law.

[19]

103.   Defendants' collection of additional amounts are collection attempts for amounts not expressly authorized by the agreement.

## THIRD VIOLATION OF THE HAWAI'I REVISED STATUTES:
## THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

104.   The acts of Defendants constitute violations of the Hawai'i Revised Statutes.  Violations include, but are not limited to, the collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law.  Such conduct violates Haw. Rev. Stat. § 443B-19(2).

105.   Defendants' attempts to collect additional interest in each of their letters are collection attempts for amounts not expressly authorized by the agreement.

106.   By assigning different account balances and interest rates to the same account, none of which are the applicable contract rate of interest, Defendants have made a false representation or implication of the character, extent, or amount of money Ms. Uluave owes.

107.   Moreover, most of the collection letters from Defendant Midland state "the amount you owe may be greater because of interest that may vary from day to day." See Exhibits Two, Three, Four, and Five.

[ 20 ]

108.    Ms. Uluave asserts that her original contract did not allow for the imposition of interest, fees, or charges that may cause her account balance to vary from day to day.

109.    The letters from Defendants demand very odd amounts from Ms. Uluave and she is confused as to how Defendants calculated said amounts and what authority they have to demand an unfamiliar rate of interest.

### FOURTH VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

110.    The acts of Defendant constitute violations of the Hawai'i Revised Statutes.  Violations include, but are not limited to, the collection of or the attempt to collect from a debtor or alleged debtor all or any part of the collection agency's fees or charges for services rendered.  Such conduct is a violation of Haw. Rev. Stat. § 443B-19(3).

111.    Ms. Uluave asserts that Defendants did not have authority to impose additional fees on the originating account.

112.    Defendant is attempting to collect its collection agency fees or charges for services rendered, and is thus in violation of Haw. Rev. Stat. § 443B-19.

### FIFTH VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

113.    The collection of or the attempt to collect any interest or other charge, fee,

or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law is a violation of Haw. Rev. Stat. § 443B-19(4).

114.   The amounts demanded by Defendants increased from 10,497.55 on October 18, 2012 to $11,218.79 on February 27, 2013, increased again to $11,446.55 as of April 11, 2013, increased again to $12,889.03 on January 3, 2014, and increased yet again to $13,116.79 on February 12, 2014.

115.   A calculation of the time between the letters and the amounts demanded in the letters shows that the balance increased at rates that do not comply with the terms of the initial contract.

116.   A calculation of the time passed and the amount demanded demonstrates that Defendant Midland is adding interest at annual percentage rates of 18.998%, 17.233%, 17.227%, and 16.125%; none of which are the contractual rate of interest.

117.   As a result of Defendants' actions, Ms. Uluave is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

### *Summary*

118.   The above-detailed conduct by Defendants and its agents in connection

with collection of the debt, was conduct in violation of numerous and multiple provisions of the FDCPA and Hawai'i Revised Statutes including, but not limited to the above-cited provisions.

## **TRIAL BY JURY**

119.   Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against any or all Defendants and in favor of the Plaintiff as follows:

a)   Declaratory judgment that any or all Defendants violated Ms. Uluave's rights under the Fair Debt Collection Practices Act;

b)   Declaratory judgment that any or all Defendants violated Ms. Uluave's rights under the Hawai'i Revised Statutes;

c)   That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every defendant in an amount to be determined at a trial by a jury;

d)   That Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §1692k(a)(2);

e)      That Plaintiff be awarded the costs of litigation including a reasonable

attorney fee pursuant to 15 U.S.C. §1692k(a)(3);

f)      That Plaintiff be awarded actual damages pursuant to Haw. Rev. Stat.

§  480-13 in an amount to be determined by a jury at trial;

g)      That Plaintiff be awarded statutory damages of not less than $1,000.00

pursuant to Haw. Rev. Stat. §  480-13;

h)      That Plaintiff be awarded the costs of litigation including a reasonable

attorney fee pursuant to Haw. Rev. Stat.  § 480-13;

i)      That the Court declare all defenses raised by Defendant to be

insufficient; and

j)      Such other and further relief, including injunctive relief as may be

necessary to effectuate the Court's judgment, or as the Court otherwise

deems just and equitable.


Respectfully submitted this the 4th day of March, 2014.

<div style="margin-left:40%">

*/s/ Justin A. Brackett*
Justin A. Brackett, #9954
Richard L. Holcomb, #9177
Attorneys for Plaintiff
1136 Union Mall, Suite 808
Honolulu, TN 96813
(808) 545-4040
rholcomblaw@live.com

</div>

[ 24 ]